IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Timothy Cassidy, | ) | C/A No.: 1:13-821-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").[1] The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

---

[1] Plaintiff also applied for Supplemental Security Income (134–40); however, his application was denied in an initial determination due to excess income (Tr. at 72–77, 155), and Plaintiff did not pursue this claim any further (Tr. at 84, 89–90).

I.      Relevant Background

   A.      Procedural History

On February 23, 2010, Plaintiff filed an application for DIB in which he alleged his disability began on November 17, 2008. Tr. at 132–33. His application was denied initially and upon reconsideration. Tr. at 61–64. On June 3, 2011, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Augustus C. Martin. Tr. at 28–60 (Hr'g Tr.). The ALJ issued an unfavorable decision on June 23, 2011, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 14–23. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 2–4. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on March 27, 2013. [Entry #1].

   B.      Plaintiff's Background and Medical History

      1.      Background

Plaintiff was 47 years old at the time of the hearing. Tr. at 33. He completed high school. Tr. at 35. His past relevant work ("PRW") was as a hotel manager. Tr. at 38, 57. He alleges he has been unable to work since November 17, 2008. Tr. at 132.

      2.      Medical History

Plaintiff alleges he became disabled as a result of ankylosing spondylitis in his back. Tr. at 168. He complains of pain in his lower back, neck, hips, shoulders, feet, and hands. Tr. at 197, 226, 232. The Commissioner's brief [Entry #13] includes a detailed summary of Plaintiff's medical records. Plaintiff did not provide a summary of the

2

medical records and, on reply, did not dispute the facts as set forth by the Commissioner. Thus, the undersigned concludes that Plaintiff does not dispute the medical history summary provided by the Commissioner. In addition, Plaintiff's allegations of error are discrete issues that do not require an exhaustive examination of the medical record. Consequently, while the undersigned typically provides a detailed summary of Plaintiff's medical history, such a summary is rendered superfluous in this case.

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

           a.    Plaintiff's Testimony

At the hearing on June 3, 2011, Plaintiff testified that he had not worked since November 2008, but that he had looked for work and had received unemployment benefits for approximately one-and-a-half years after he stopped working. Tr. at 36–38. He testified that he walked with a cane because it helped him to be sturdy on his feet. Tr. at 36. He said that dizziness had caused him to fall in the past. *Id.* He stated that he had stopped driving approximately one year prior to the hearing because he could not turn his neck to see to the side or to the back. Tr. at 35.

Plaintiff said that, in a typical day, he spent a quarter of the day sitting and the rest of the day lying down. Tr. at 46. He estimated that he could sit in one place for approximately 15 minutes before having to move and that he could stand in one spot for 15 to 20 minutes. Tr. at 48–49. He stated that he took as many as eight hot baths per day. Tr. at 55. He testified that he was in pain 24 hours a day and that medication only brought his pain level down to an eight out of 10. Tr. at 48. He stated that the pain

affected his ability to concentrate and that he was unable to pick up a gallon of milk. Tr. at 48, 53.

Plaintiff testified that he could no longer lift anything and could not stand or sit for very long. Tr. at 39. He described pain in his lower back that radiated into his legs as well as pain in his neck and shoulders. *Id.* He stated that his pain medication made him nauseous, dizzy, and sleepy. Tr. at 39, 41. He identified his medications, including Oxycodone, Flexeril, Lexapro, Humira shots, and a morphine patch. Tr. at 40. He stated that his pain became worse after standing too long, walking, trying to lift something, and staring one way too long. Tr. at 41.

### b. Vocational Expert Testimony

Vocational Expert ("VE") Arthur Smith reviewed the record and testified at the hearing. Tr. at 56. The VE categorized Plaintiff's PRW as a hotel manager as skilled, sedentary work. Tr. at 57. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform sedentary work, but could not climb ladders, ropes, or scaffolds; could occasionally reach overhead and perform other postural movements; and must avoid concentrated exposure to extreme cold and all exposure to hazards. Tr. at 57. The VE testified that the hypothetical individual could not perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified the jobs of surveillance systems monitor, ticket seller, and weight inspector. *Id.* The VE stated that these jobs would be available even if the hypothetical individual required a sit/stand option. Tr. at 57–58. The VE testified that if the hypothetical individual were further

limited to occasionally performing tasks involving fingering and fine manipulation, he would be able to perform the jobs of surveillance systems monitor and telephone quotation clerk. Tr. at 58. The VE stated that if the hypothetical individual needed to lie down two to four hours per day, all jobs would be eliminated. Tr. at 58–59.

    2.    The ALJ's Findings

In his decision of June 23, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
2. The claimant has not engaged in substantial gainful activity since November 17, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairments: ankylosing spondylitis; chronic pain syndrome; and residuals of rotator cuff repair (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, stand and walk occasionally. The claimant cannot climb ladders, ropes or scaffolds and can only occasionally perform other postural movements. The claimant can occasionally reach overhead and must avoid concentrated exposure to extreme cold and all exposure to hazards. Lastly, the claimant needs to be able to alternate his position at will, is limited to unskilled work and requires a cane for ambulation.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on June 12, 1964 and was 44 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

5

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2008, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 16–23.

II.   Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)   the ALJ failed to properly assess the opinion of Plaintiff's treating physician; and

2)   the ALJ erred in failing to consider the side effects of Plaintiff's medications.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

   A.   Legal Framework

      1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

6

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

        2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the

8

Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    Treating Physician Opinion

Plaintiff alleges that the ALJ erred in according little weight to the opinion of his treating physician, Wendy Lee, M.D. [Entry #12 at 2]. The Commissioner responds that the ALJ reasonably evaluated Dr. Lee's opinion. [Entry #13 at 11–14].

9

If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001). In undertaking a review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because the court's role is not to "undertake to re-

10

weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

On June 1, 2011, Dr. Lee stated that she had been treating Plaintiff since 2009 and had diagnosed Plaintiff with HLA-B27 related spondyloarthropathy. Tr. at 344. Dr. Lee noted that Plaintiff's pain had decreased by 50% in response to a Humira injection, but that he still needed a significant amount of narcotic pain medication and had been referred to a pain specialist. *Id.* Dr. Lee opined that Plaintiff "would not be able to return to work for next 12 months since he would not be able to lift, push, pull objects more than 10 lbs, not able to sit, stand, walk for [] more than 30 minutes." Tr. at 345.

The ALJ accorded little weight to the functional limitations identified by Dr. Lee. Tr. at 21. In doing so, the ALJ noted that Plaintiff's testimony that he spends one quarter of his day sitting was inconsistent with Dr. Lee's statement that Plaintiff could not sit for more than 30 minutes. *Id.* The ALJ also noted that Dr. Lee's treatment notes revealed that Plaintiff improved with injection therapy and was able to decrease his reliance on Oxycodone in November 2010. *Id.*

Plaintiff asserts that the ALJ's finding that his testimony and Dr. Lee's opinion are inconsistent is based on a mischaracterization of Plaintiff's statement because "Plaintiff did not state that he sat for 1/4th of the day at one time." [Entry #12 at 3]. He further argues that such an interpretation of his statement would mean that he would sit for six hours at a time and lie down the remaining 18 hours of the day. *Id.* The Commissioner contends that Dr. Lee's statement that Plaintiff was not able to sit, stand, or walk for

11

more than 30 minutes "was clearly inconsistent with Plaintiff's testimony that he spent a quarter of his day sitting." [Entry #13 at 13].

The undersigned concludes that the ALJ's finding that these statements were inconsistent was unreasonable. There is no conflict between Plaintiff stating that he could sit for a quarter of the day and Dr. Lee stating that Plaintiff could only sit for 30 minutes at a time. Furthermore, the ALJ included a sit/stand option in Plaintiff's RFC, suggesting that he recognized that Plaintiff could not remain in one position for a long period of time.

The only other reason offered by the ALJ for discounting Dr. Lee's opinion was that her treatment notes indicated that Plaintiff improved with injection therapy and he was able to decrease his reliance on oxycodone in November 2010.[4] Tr. at 21. Dr. Lee's opinion specifically recognized that Humira injections helped to lessen Plaintiff's pain, but the doctor noted that Plaintiff still required a significant amount of narcotic pain medication. Thus, there is no apparent conflict between Dr. Lee's treatment notes and her opinion.

For the foregoing reasons, the undersigned finds that the ALJ's decision to discount Dr. Lee's opinion is not supported by substantial evidence. On remand, the ALJ

---

[4] To the extent the Commissioner contends Dr. Lee's opinions were inconsistent with her own treatment records generally or with the record as a whole, the undersigned finds that these are impermissible post hoc rationalizations not included in the ALJ's decision. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

12

should be directed to consider Dr. Lee's opinion in accordance with 20 C.F.R. § 404.1527(c)(2) and SSR 96-2p.

### 2. Plaintiff's Remaining Allegation of Error

Plaintiff also asserts that the ALJ did not adequately consider the side effects of his medications. [Entry #12 at 5]. In light of the foregoing recommendation related to the ALJ's treatment of Dr. Lee's opinion, the undersigned does not address this allegation of error in detail. The undersigned notes that contrary to Plaintiff's assertion that the ALJ failed to consider the medication side effects, the ALJ referenced Plaintiff's testimony that when he took his pain medication, he became dizzy and sleepy. Tr. at 19. However, the ALJ found Plaintiff's testimony not fully credible and identified several valid reasons for that finding. Tr. at 19–20. On remand, the undersigned recommends that the ALJ be directed to specifically address the alleged side effects of Plaintiff's medications and how they impact his RFC.

## III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

*[signature: Shiva V. Hodges]*

March 10, 2014                                       Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).